**YODER MACHINERY SALES COMPANY, Appellant,**

v.

**WELDON F. STUMP & CO., INC. et al., Appellees.**

[Cite as *Yoder Machinery Sales Co. v. Weldon F. Stump & Co., Inc.,* 176 Ohio App.3d 668, 2008-Ohio-72.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1139.

Decided Jan. 11, 2008.

John J. McHugh III and Patrick A. Sadowski, for appellant.

Howard Hershman, for appellee John Graham, Chapter 7 Trustee for Weldon F. Stump & Co., Inc.

Steven Alexsy, for appellee Huntington National Bank.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, which denied appellant's motion to be named winding-up partner and granted a motion to intervene filed by secured creditor Huntington National Bank ("Huntington"). For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Yoder Machinery Sales Company ("Yoder"), sets forth the following two assignments of error:

{¶ 3} "Assignment of Error No. 1. The trial court erred as a matter of law in declining to appoint appellant as the winding-up partner of the partnership.

{¶ 4} "Assignment of Error No. 2. The trial court erred as a matter of law in permitting the Huntington National Bank to intervene in the dissolution and winding-up of the partnership."

{¶ 5} The following undisputed facts are relevant to the issues raised on appeal. Yoder and Weldon F. Stump & Co. ("Stump") were two separate businesses engaged in used-machinery sales. Huntington is a secured creditor of Stump. Yoder and Stump collaborated for over three decades in the purchase

and resale of used machinery and equipment. Their business practice and custom was that one of the businesses would front the initial purchase price in its entirety for the used equipment and retain sole possession of it until resale. Upon resale, the proceeds would be distributed on a pro rata basis, net costs, to all owners. In the interim, the other owners would be invoiced.

{¶ 6} Ray Darr, controller of Stump during the course of its used-machinery resale partnership with Yoder, testified that the partnership arrangements between Yoder and Stump were primarily oral, with the sole document memorializing these arrangements being the invoices prepared for the co-owners who had agreed to participate in the purchase and resale venture.

{¶ 7} As the assets of these informal used-machinery partnerships have been liquidated, Yoder has failed to issue distribution payments to Stump. In conjunction with this, Yoder has continued liquidating these joint assets without consent of the Chapter 7 bankruptcy trustee for Stump.

{¶ 8} On October 20, 2003, approximately five months before Huntington filed suit against Stump to enforce and protect its perfected security interest, Stump inexplicably altered the inventory coding on its jointly owned machinery and equipment in which Yoder maintained an interest. The asset coding was modified to reflect that the machines were solely owned by Yoder. The prior coding, confirming joint ownership with Stump, was deleted. None of the parties involved in the suspect coding modifications furnished any testimony evidencing a legitimate business reason.

{¶ 9} On March 25, 2004, judgment was entered in favor of Huntington against Stump in an amount of $2,676,832.93. On March 25, 2004, Huntington filed a complaint against Stump seeking enforcement of its security interests and for appointment of a receiver. Significantly, on March 31, 2004, just one week after Huntington received its judgment adverse to Stump, the bulk of Stump employees were furnished similar positions working for Yoder, undermining continued operations of Stump. In April 2004, Yoder modified its inventory records to eliminate any reference to machinery jointly owned with Stump rendering its asset modifications consistent with the alterations already performed in the inventory records of Stump.

{¶ 10} On June 29, 2004, Yoder filed suit seeking dissolution of the Stump partnership and an order appointing Yoder as winding-up partner. Ultimately, an involuntary bankruptcy was filed against Stump. A Chapter 7 bankruptcy trustee was appointed.

{¶ 11} On January 3, 2006, Huntington filed a motion to intervene in the complaint filed by Yoder to dissolve its partnership with Stump. Huntington furnished evidence that it is a secured creditor of Stump and possesses valid and

protected security interests against Stump assets. Clearly, the assets relevant to this case include the machinery and equipment jointly owned with Yoder. On December 11, 2006, the court granted Huntington's motion to intervene in the Yoder/Stump dissolution case. On January 23, 2007, Yoder filed a renewed motion for appointment as the winding-up partner for the Yoder/Stump partnerships. The motion was denied. A timely notice of appeal was filed.

{¶ 12} In its first assignment of error, Yoder asserts that the trial court erred in declining to name it as winding-up partner. In support, Yoder argues that the trial court judgment denying its motion was contrary to the evidence.

{¶ 13} A judgment supported by competent, credible evidence will not be reversed by a reviewing court unless it is against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Trial court findings are presumed correct and are reviewed with deference by an appellate court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The rationale underlying this deferential standard of review is rooted in the notion that the trial court is best suited to view the witnesses, observe their demeanor, and utilize first-hand observations in weighing the credibility of evidence and testimony. *Springfield Twp. Bd. of Trustees v. Anderson,* 6th Dist. No. L–06–1014, 2007-Ohio-1530, 2007 WL 949762.

{¶ 14} R.C. 1775.36 establishes the parameters of those who are qualified to be appointed as winding-up partner. The statute provides that "the partners who have not wrongfully dissolved the partnership or the legal representatives of the last surviving partner, not bankrupt, has [sic] the right to wind up the partnership affairs."

{¶ 15} We have carefully reviewed the record of evidence, paying particular attention to the actions of Yoder and Stump connected to their used-machinery resale partnership. This joint enterprise clearly was part of the ongoing business operations of both entities. The record reflects that as business conditions at Stump deteriorated, its viability became suspect, and its creditors began to take proactive measures to protect their security interests, both Stump and Yoder engaged in collaborative conduct contrary to proper dissolution of their machinery partnership.

{¶ 16} The record establishes through the testimony of relevant employees of both companies that they engaged in post hoc asset-accounting modifications that clearly ran counter to the security interest of Huntington. Their conduct was explicitly and implicitly designed to remove assets from the inventory of Stump in contravention of years of internal business practice and custom and thereby avoid the reach of Huntington. As the inevitability of receivership and asset liquidation

of Stump became apparent, Yoder simultaneously poached the Stump workforce, accelerating its demise.

{¶ 17} The record contains ample objective and credible evidence supporting the conclusion that Yoder did not qualify as winding-up partner of Stump pursuant to R.C. 1775.36. The record encompasses a multitude of actions by Yoder demonstrative of a pattern of conduct indicative of highly suspect partnership dissolution. There is ample evidence in the record constituting competent, credible evidence in support of denying Yoder's motion to be named winding-up partner of Stump. Yoder's first assignment of error is found not well taken.

■ {¶ 18} In Yoder's second assignment of error, it asserts that the trial court abused its discretion in granting Huntington's motion to intervene in the Yoder case seeking official dissolution of its partnership with Stump.

{¶ 19} Civ.R. 24(A) establishes the prerequisites in order for a party to be entitled to intervention in a pending action as a matter of right. It states that "when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

{¶ 20} As was discussed in some detail above, the applicant in this matter, Huntington, clearly possessed an interest relating to the property that was the subject of the pending action. Huntington possessed perfected security interests against assets of Stump. In conjunction with this, Huntington possessed a judgment against Stump in the amount of $2,676,832.93.

{¶ 21} In the context of the above scenario, Yoder filed suit seeking to dissolve its machinery partnership with Stump simultaneous to both Stump and Yoder altering their asset records in an effort to delete Stump's co-ownership interest in the partnership's machinery. Clearly, Huntington's security interest could not be adequately represented by the existing parties. Disposition of the action without inclusion of Huntington in the case would impede its ability to protect its security interest.

■ {¶ 22} Our review of the disputed granting of Huntington's motion to intervene is conducted pursuant to the abuse-of-discretion standard. In order to find that an abuse of discretion occurred, we must be convinced by the record of evidence that the disputed decision was unreasonable, arbitrary, or unconscionable and not an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 23} Given the facts of this case, we need not belabor our analysis on this issue. Whether reviewing the second assignment of error on a de novo or abuse-of-discretion standard, it is equally clear that Huntington's security interest was related to property included in the subject action, disposition of the action would impede Huntington's ability to protect that interest, and Huntington's interest would not be adequately represented by the existing parties. Therefore, we find Yoder's second assignment of error not well taken.

{¶ 24} The judgment of the Lucas County Court of Common Pleas is affirmed.

Judgment affirmed.

PIETRYKOWSKI, P.J., and SINGER, J., concur.